# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD HISERT, Manager,<br>on behalf of H2H ASSOCIATES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BLUE WATERS DREDGING LLC,<br>DAVID URBANI, HERBERT HASCHEN,<br>and DOROTHY B. WILLIAMS,<br><br>    Defendants. | Civil Action No.<br>16-11960-FDS |

## MEMORANDUM AND ORDER ON DEFENDANTS URBANI'S AND HASCHEN'S MOTIONS TO DISMISS

**SAYLOR, J.**

This is an action arising out of a contract dispute concerning a marine dredging project. In July 2015, the Army Corps of Engineers awarded plaintiff H2H Associates, LLC a contract for a dredging project in Cohasset Harbor in Massachusetts. H2H subcontracted with defendant Blue Waters Dredging LLC to perform work on that project ("BWD"). The verified amended complaint alleges that BWD failed to perform under the contract as promised and repeatedly made false statements and threats to induce H2H to make payments to BWD not due under the contract. The complaint alleges three counts under Massachusetts law for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud.

Defendants Herbert Haschen and David Urbani have separately moved to dismiss the complaint. For the following reasons, Urbani's motion will be denied, and Haschen's motion will be granted in part and denied in part.

I.  **Factual Background**

The following facts are set forth as alleged in the verified amended complaint.

Plaintiff H2H Associates, LLC, is a New York limited liability company. (Hisert Aff.). Richard Hisert is the sole manager and member of H2H. (Am. Compl. ¶ 4).

Defendant Blue Waters Dredging LLC is a Maryland limited liability company. (*Id.* ¶ 6). At all relevant times, defendants Herbert Haschen, David Urbani, and Dorothy B. Williams were members of BWD and residents of Maryland. (*Id.* ¶¶ 12–14). Urbani is also a principal member of Morris Street Financial LLC, a finance company funding BWD. (*Id.* ¶ 12; *Id.* Ex. A).

  A.  **Prime Contract with the ACOE**

On July 13, 2015, the Army Corps of Engineers ("ACOE") awarded H2H the prime contract for a marine dredging project in Cohasset Harbor in Massachusetts. (*Id.* ¶ 5). H2H secured a 100% performance and payment bond with International Fidelity Insurance Company in the amount of $1,703,090, as required by the prime contract. (*Id.* ¶ 8). The prime contract required H2H to maintain sufficient capacity and equipment to complete the project by January 31, 2016. (*Id.* ¶¶ 21–22, 45). It further required H2H to propose a schedule of equipment needed to meet that deadline, subject to the ACOE's approval. (*Id*. ¶ 24).

  B.  **Subcontract with BWD**

On August 27, 2015, H2H subcontracted with BWD to perform work on the project for a price of $1,194,611. (*Id.* ¶¶ 7, 10). The subcontract required BWD to provide all "materials, labor, [and] equipment to dredge Cohasset Harbor." (*Id.* ¶ 9). Also on August 27, Urbani, Haschen, and Williams submitted equipment specifications to H2H. (*Id.* ¶ 23). Thereafter, H2H sent an equipment list containing BWD's specifications to the ACOE and received approval. (*Id.* ¶¶ 24–25).

### C. Booster Pump

The specifications submitted by BWD and approved by the ACOE included an Ellicott Series 670 Booster Pump that was necessary to perform the dredging work. (*Id.* ¶ 23). BWD arrived at the job site to commence work on October 3, 2015. However, it did not have the required booster pump and thus the dredging operations could not be performed. (*Id.* ¶¶ 28, 31).

The amended complaint alleges that on October 21, 2015, nearly three weeks later, defendants represented to H2H that BWD's financial condition did not allow it to purchase or lease a booster pump, and requested financing to procure a pump. (*Id.* ¶¶ 33, 37). Despite that representation, on October 22, defendants admitted they had arranged to purchase a new booster pump the previous month in order to save $100,000, but that the new pump had not been built in time for work to begin. (*Id.* ¶¶ 34–35). The next day—after BWD had already missed 18 good-weather days suitable for dredging in October—H2H loaned BWD $70,000 to lease a booster pump. (*Id.* ¶ 36). On November 3, 2015, dredging operations finally commenced after the leased booster pump arrived. (*Id.* ¶¶ 38–39).

### D. Project Performance

Shortly after dredging work began, the ACOE relayed progress concerns to H2H, which in turn, transmitted them to BWD. (*Id.* ¶¶ 41–42). Although the project was experiencing delays, BWD began making repeated demands for payments not due under the contract and threatening to cease operations if not paid. (*Id.* ¶¶ 70–71). On October 29 and again on November 10, 2015, defendants threatened to cease operations unless H2H paid BWD $252,154. H2H paid that amount on November 12. (*Id.* ¶¶ 72–74). On November 29, 30, and December 14, defendants again demanded money and threatened to walk off the job. (*Id.* ¶¶ 75–77). H2H again complied and sent BWD another payment of $62,476.79. (*Id.* ¶ 78). On December 22,

Urbani sent Hisert an e-mail stating that he was the "silent partner" of BWD and the principal member of the finance company funding BWD. (*Id.* Ex. A). Urbani stated that BWD had incurred significant operating, capital, and payroll costs on the project and that, as a result, "it would be appropriate for H2H to advance BWD funds until the payments for yards dredged starts flowing." (*Id.*).

On December 29, 2015, defendants threatened to walk off the job unless H2H made payments not due under the contract. H2H paid BWD $262,643.28 the same day. (*Id.* ¶¶ 80–81). On January 6 and 18, 2016, defendants again demanded money and threatened to stop work unless BWD received weekly payments. (*Id.* ¶ 82–83). On January 20, 25, and February 3, H2H complied and paid BWD three installments of $75,000. (*Id.* ¶ 84).

Meanwhile, dredging progress slowly continued. The ACOE made repeated requests for information and asked for a revised dredging plan in order to bring the project up to speed. (*Id.* ¶¶ 43–44). Defendants failed to comply with those demands, and ultimately, failed to meet project deadlines. (*Id.*). Although the project was due to be completed by January 31, 2016, the ACOE agreed to extend the completion date three times; first to February 14, then to February 19, and finally to February 26. (*Id.* ¶ 45, 47).

On February 4, 2016, Urbani sent H2H an e-mail stating that BWD would cease dredging operations unless H2H either shared equally all proceeds from the prime contract with BWD or, in the alternative, assumed all of BWD's assets and liabilities, including a $325,000 debt owed to Urbani's company, Morris Street Financial. (*Id.* ¶ 85, *Id.* Ex. B). On February 6, 2016, Urbani sent another e-mail stating that BWD would continue operations only if, among other things, H2H agreed to make an immediate lump-sum payment of $80,000. (*Id.* ¶ 86, *Id.* Ex. C). H2H made a final $75,000 payment on February 10. However, BWD again refused to continue

4

dredging unless still more payments were made.  (*Id.* ¶ 87).

On February 20, 2016, BWD informed the ACOE and H2H that it would cease operations.  (*Id.* ¶ 51).  On February 21, the BWD crew showed up for work, but BWD management sent them home.  (*Id.* ¶ 52).

During the course of the project, Williams signed six partial lien waivers and Haschen signed one partial lien waiver.  Those lien waivers attested that BWD had paid its subcontractors and suppliers more than $672,865.  (*Id.* ¶¶ 58–65).  The amended complaint alleges that when Haschen and Williams signed the lien waivers, they knew that BWD had not, in fact, made those payments.  (*Id.* ¶ 55, 65).  According to the amended complaint, Urbani received copies of all lien waivers submitted to H2H and also knew they were false.  (*Id.* ¶ 69).  It alleges that Urbani, Haschen, and Williams "fil[ed]" those lien waivers with knowledge of their falsity.  (*Id.* ¶ 66).

The amended complaint alleges that H2H made payments to BWD in response to its repeated demands and in reliance on the representations that BWD had been paying its vendors and suppliers.  (*Id.* ¶ 60, 68, 88).  Despite those representations, BWD in fact failed to pay its vendors a total of $435,261.75.  (*Id.* ¶ 53–54).  As a result, unpaid vendors made claims totaling $447,627.96 against H2H's payment bond, of which $102,483 has been paid.  (*Id.* ¶ 89).  In addition, because BWD did not complete the project, H2H was forced to pay a substitute contractor $1,187,753.55 to finish the work.  (*Id.* ¶ 92).

In total, H2H paid BWD $947,274.07.  (*Id.* ¶ 88).  The amended complaint alleges that H2H has suffered damages of $5,096,998, including lost profits.  (*Id.* ¶ 94).

## II. Procedural Background

On September 29, 2016, H2H Associates, LLC brought this action.  Defendants Urbani and BWD filed motions to dismiss on January 6, 2017.  On March 8, 2017, H2H filed a verified

5

amended complaint, substituting Richard Hisert on behalf of H2H as plaintiff, and eliminating one defendant. The amended complaint alleges three counts under Massachusetts law for breach of contract, breach of the covenant of good faith and fair dealing, and fraud against all defendants.

Defendants Urbani and Haschen have filed separate motions to dismiss the claims pleaded against them under Rule 12(b)(6).

### III. Standard of Review

On a motion to dismiss for failure to state a claim made pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). To survive a motion to dismiss, the complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Under Fed. R. Civ. P. 9(b), the standard for allegations of fraud and fraud-based claims is higher than the normal pleading standard. To survive a motion to dismiss, a complaint alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy the requirements of Rule 9(b), plaintiffs must specifically plead "the time, place and

6

content of an alleged false representation." *U.S. ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 34 (1st Cir. 2013); *accord Rodi v. Southern N.E. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004) (stating that Rule 9(b) is satisfied by averment of "the who, what, where, and when of the allegedly false or fraudulent representation"). However, "the specificity requirement extends only to the particulars of the allegedly misleading statement itself. . . . The other elements of fraud, such as intent and knowledge, may be averred in general terms." *Rodi*, 389 F.3d at 15.

A.  **Count Three – Fraud**

Count Three alleges a claim for fraud or deceit. To prove a claim for fraud under Massachusetts law, a plaintiff must show that the defendant "made a false representation of material fact; for the purpose of inducing reliance; and that the plaintiff relied upon the representation to his or her detriment." *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 22 (1st Cir. 2001). Although a claim for fraud is characterized as an intentional tort, "[p]roof of intent to deceive is not required, so long as there is proof of a false representation of fact susceptible of the speaker's knowledge." *Id.* The amended complaint must plausibly allege that the person making the representation "(a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." *Id.* at 23.

The thrust of the fraud claim is that defendants represented that BWD's suppliers and vendors had been paid, when, in fact, they had not; that H2H capitulated to repeated demands for payments not due under the contract, in reliance on BWD's representation; and that H2H was harmed by that reliance. As defendants note, many of the alleged misrepresentations were made by Dorothy Williams, not Haschen or Urbani, because she was the person who actually executed

7

six of the seven allegedly fraudulent lien waivers. However, the amended complaint alleges that Haschen personally executed one of the lien waivers on December 30, 2015. It also alleges that Urbani received copies of lien waivers and "fil[ed]" them despite knowing they were false. It further alleges that he sent an e-mail to Hisert on December 22, 2015, in which he represented that BWD had incurred significant operating and capital costs although, in fact, suppliers and vendors of BWD were not being paid. Under the circumstances, the amended complaint states with sufficient particularity that Haschen and Urbani made fraudulent misrepresentations.

Defendants contend that Count Three must nonetheless be dismissed because it fails to plead with particularity circumstances that give rise to a strong inference that Haschen and Urbani knew the representations were false at the time they were made. Contrary to defendants' assertions, under Rule 9(b) "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Rodi*, 389 F.3d at 15. Here, the circumstances alleged in the amended complaint give rise to a plausible inference that Haschen and Urbani— who were both members of BWD, were in contact with H2H concerning this project, and were making representations concerning the status of payments to vendors—knew that their statements were false at the time they were made.

Accordingly, Haschen's and Urbani's motions to dismiss Count Three will be denied.

### B.   Counts One and Two – Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

Counts One and Two allege claims for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively. Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract; a breach of the covenant "exists only where there is an enforceable contract between the parties." *Burnett v. Flagstar Bank*, 2012 WL 3257884, at *1 (D. Mass. Aug. 7, 2012). Thus, to state a claim for breach of contract or breach

8

of the implied covenant, the amended complaint must generally allege that there was a valid contract between the parties. *See Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 388 (D. Mass. 2012).

The parties to the contract at issue here were H2H and BWD, not Urbani and Haschen. However, that fact is not necessarily fatal to the contract and implied covenant claims against Urbani and Haschen. Under some circumstances, individual members of an LLC may be held liable for the acts of the company "where they control the operation of the [company] and run it for their personal benefit, and where justice requires that the separate existence of the corporation be ignored." *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 16 (1st Cir. 1985) (applying doctrine to corporation); *see also Middlesex Ret. Sys., LLC v. Bd. of Assessors of Billerica*, 453 Mass. 495, 504 (2009) (applying doctrine to LLC). The doctrine of corporate disregard or "veil-piercing" is not a cause of action, but instead is an equitable remedy that may be applied where it is necessary "to provide a meaningful remedy for injuries and to avoid injustice." *Middlesex Ret. Sys., LLC*, 453 Mass. at 504; *see also My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 618 (1968) (allowing veil-piercing for the purpose of "defeating fraud or wrong, or for the remedying of injuries").

A member of an LLC may be held liable for the acts of the company where he or she exercised (1) "some form of pervasive control" over the activities of the LLC, and (2) "there is some fraudulent or injurious consequence" as a result. *Scott v. NG U.S. 1, Inc.,* 450 Mass. 760, 767 (2008) (quoting *My Bread*, 353 Mass. at 619.). Twelve factors guide the application of that test: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated

transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) non-functioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." *Attorney Gen. v. M.C.K., Inc.,* 432 Mass. 546, 555 n.19 (2000); *see also Pepsi–Cola,* 754 F.2d at 14–16.

As to Urbani, the amended complaint alleges facts touching on many of those factors. It alleges that Urbani is both a member of BWD and the principal member of the finance company funding BWD, suggesting that he had significant control over BWD. It alleges that Urbani made repeated demands for payments not due under the contract; that he successfully procured those payments by misrepresenting that vendors and suppliers had been paid, and by threatening to walk off the job; and that, when paid, he diverted funds to another of his companies and to his personal accounts. It further alleges that H2H suffered substantial harm as a result of that fraud. Finally, it alleges that BWD did not have sufficient funds to procure a booster pump and that it needed repeated cash injections to continue operations, suggesting that the LLC was thinly capitalized. Although the evidence ultimately may not support a finding that Urbani should be personally liable on the contract, the amended complaint states a plausible claim for piercing the veil as to him. *See Lipsitt v. Plaud*, 466 Mass. 240, 254 (2013) (finding that where factual allegations in a complaint "touched on at least half of the factors" the complaint plausibly alleged a claim for individual liability of a corporate officer). Accordingly, Urbani's motion to dismiss will be denied as to the claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

The amended complaint alleges comparatively few facts concerning Haschen's individual liability for the actions of BWD. Although it alleges that he was a managing member of BWD and states a plausible claim for fraud against him, it does not provide any additional facts that

suggest that he should be personally liable for the acts of the company. Unlike Urbani, it does not suggest that he diverted funds from BWD for his personal use or sought payments by making fraudulent statements in order to fund another of his companies. As there are not sufficient facts alleged to support a plausible claim for veil-piercing as to Haschen, the breach of contract and breach of the implied covenant of good faith and fair dealing claims will be dismissed as to him.

### C. Blue Waters Dredging LLC

At oral argument concerning these motions, counsel for plaintiff agreed to dismiss BWD from this action. Accordingly, the claims against BWD will be dismissed.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss brought by defendant David Urbani is DENIED. The motion to dismiss brought by defendant Herbert Haschen is GRANTED as to Counts One and Two and otherwise DENIED. All claims against defendant Blue Waters Dredging LLC are DISMISSED.

**So Ordered.**

Dated: June 20, 2017

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge