UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD HISERT, Manager,<br>on behalf of H2H ASSOCIATES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BLUE WATERS DREDGING LLC,<br>DAVID URBANI, HERBERT HASCHEN,<br>and DOROTHY B. WILLIAMS,<br><br>Defendants. | Civil Action No.<br>16-11960-FDS |

# MEMORANDUM AND ORDER ON SECOND MOTION
# FOR JUDGMENT OF DEFAULT AGAINST DOROTHY WILLIAMS

**SAYLOR, C.J.**

This action arises out of a contract dispute concerning a marine dredging project. In July 2015, the Army Corps of Engineers awarded H2H Associates, LLC a contract for a dredging project in Cohasset, Massachusetts. H2H subcontracted with Blue Waters Dredging LLC ("BWD") to perform work on that project. According to H2H, BWD fraudulently induced H2H to make payments to it by submitting false lien waivers and then abandoned the job.

H2H brought suit against BWD and its members, including Herbert Haschen and Dorothy Williams. A default was entered against defendant Dorothy Williams on July 31, 2019. The case against defendant Herbert Haschen went to trial, and on August 8, 2019, the jury found him liable for $148,626. H2H now seeks a default judgment against Williams pursuant to Fed. R. Civ. P. 55(b)(1) in the amount of $342,309.38. For the following reasons, the motion will be granted.

## I. Background

### A. Factual Background

The evidence and testimony presented at trial established the following facts.

#### 1. The Dredging Job

On July 13, 2015, the Army Corps of Engineers awarded H2H a contract to dredge Cohasset Harbor in Massachusetts. On August 27, 2015, H2H subcontracted with BWD to provide all "labors, materials, equipment and services" necessary to dredge the harbor for a price of $1,194,611.

BWD was a limited liability company organized under Maryland law. During the relevant period, BWD had three members: Herbert Haschen and Dorothy Williams, who each owned a 40% share of the company, and David Urbani, who owned the remaining 20%.

In early October 2015, after the job was scheduled to be started, BWD had not yet obtained a necessary dredging booster pump. To begin the project, Haschen told H2H that BWD needed to lease a pump from another company in Long Island, but that BWD would need advance funding from H2H to be able to do so. In response, H2H transferred BWD $70,000.

From November 2015 through February 2016, BWD continued to insist that it needed funds to operate prior to the completion of significant work on the dredging job. H2H made various payments to BWD over that time period, believing that it was doing so to help BWD cover expenses and continue to operate. In total, H2H transferred to BWD a total of $947,774.07. BWD did not complete the project, causing significant losses to H2H.

#### 2. The Lien Waivers

On seven occasions during the course of the project, BWD completed and submitted "Partial Lien Waiver[s]" that certified that BWD had paid all subcontractors and vendors in

connection with the dredging job.  H2H made payments to BWD in reliance on the submission of the lien waivers.  Six of the seven partial lien waivers were signed by Williams; the other was signed by Haschen.  The sum of the transfers made by H2H in response to the six lien waivers signed by Williams was $706,866.42.  All were fraudulent, because vendors and subcontractors had not in fact been paid.

### B. Procedural Background

On September 29, 2016, H2H filed this action.  An amended complaint was filed on March 8, 2017.  Although defendant Dorothy Williams filed a letter in response to the original complaint—which the court deemed to be an answer—she did not respond to the amended complaint.  On July 31, 2019, the court entered a default against her.

A jury trial against defendant Haschen concluded on August 8, 2019, with a finding for H2H in the amount of $148,626.[1]

On August 20, 2019, H2H moved for a default judgment against Williams pursuant to Fed. R. Civ. P. 55(b)(1) for $706,866.42.

On September 13, 2019, the Court denied that motion on the ground that the damages asserted were not a "sum certain" under Rule 55(b)(1).  Instead, the Court concluded that "[p]laintiff will have to establish, by affidavit or otherwise, the amount of its damages pursuant to Rule 55(b)(2) before a default judgment may enter." (*See* Sept. 13, 2019 Memorandum and Order, Dkt. 153 at 5).

On September 23, 2019, plaintiff filed a renewed motion for default judgment against Williams.  That motion, which was also filed pursuant to Rule 55(b)(1), includes affidavits and exhibits and sought a default judgment in the amount of $342,309.38.

---

[1] Summary judgment in favor of Urbani was granted on November 16, 2018.  (*See* November 16, 2018 Memorandum and Order, Dkt. 100).

3

## II. Legal Standard

When a defendant has defaulted and the judgment amount is not a sum certain under Fed. R. Civ. P. 55(b)(1), "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). In determining whether a default judgment is appropriate, "the court may conduct hearings or make referrals . . . when, to enter a or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.*

A defendant that has defaulted is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Ortiz–Gonzalez v. Fonovisa*, 277 F.3d 59, 62–63 (1st Cir. 2002) (internal quotations omitted). In other words, a "default judgment on the well-pleaded allegations in [a] complaint establishe[s] only [the] defendant's liability." *Eisler v. Stritzler*, 535 F.2d 148, 153 (1st Cir. 1976). "Those allegations relating to the amount of damages, however, are not taken as true." *Rodriguez v. Craig*, No. 91–10665–RWZ, 1994 WL 561999, at *2 (D. Mass. Sept. 29, 1994) (citations omitted); *see also KPS Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003); *Century ML–Cable Corp. v. Carrillo Diaz*, 39 F. Supp. 2d 121, 123 (D.P.R. 1999). Therefore, the plaintiff has the burden of establishing the amount of damages it is entitled to recover. *See, e.g., Eisler v. Stritzler*, 535 F.2d at 153–54; *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 34 n. 7 (1st Cir. 1980).

A trial judge has "considerable latitude in determining the amount of damages." *Jones v. Winnepesaukee Reality*, 990 F.2d 1, 4 (1st Cir. 1993). Where the evidence is sufficient or the "district court [is] intimately familiar with the case," a plaintiff's damages amount may be determined without the holding of an evidentiary hearing on the matter. *KPS & Assoc. v.*

*Designs by FMC, Inc.*, 318 F.3d 1, 21 (1st Cir. 2003).

### III. Analysis

For the following reasons, plaintiff's motion for a default judgment against Dorothy Williams in the amount of $342,309.38 will be granted. However, Haschen and Williams will not be held jointly and severally liable for the respective judgments entered against them.

#### A. The Amount of Default Damages Against Williams

At the outset, plaintiff's motion will be construed as having been brought under Rule 55(b)(2). Although plaintiff has again insisted that he is entitled to damages under Rule 55(b)(1) for a "sum certain," the fact that he has requested a different damages figure than in his previous motion underscores the Court's reasoning in its September 13, 2019 Memorandum and Order. In any event, plaintiff has included evidence in the form of exhibits and affidavits with his most recent motion. For that reason, the Court will consider the motion under Rule 55(b)(2).

Taking the factual allegations in the complaint against Williams as true, the plaintiff has carried his burden of establishing damages against her in the amount of $342,309.38. The evidence has primarily come in the form of an affidavit from Richard Hisert. He asserts that H2H paid several of BWD's sub-contractors $342,309.38, when it had already paid that amount to BWD in response to William's fraudulent lien waivers. (Hisert Aff. ¶¶ 8-10). The affidavit is supported by the lien waivers themselves and a spreadsheet of payments to BWD subcontractors. (*See id.* Ex. A; Ex. 2). Evidence introduced at Haschen's trial concerning the nature of H2H and BWD's contractual relationship further reinforces the damages figure claimed by plaintiff. Taken as a whole, the evidence establishes that Williams' fraudulent conduct caused H2H damages of $342,309.38.

Defendant Haschen, who was found liable for $148,626 at trial, contests the amount of

the damages for two reasons.[2] First, Haschen has submitted an affidavit from Dorothy Williams, the defaulting defendant, stating that she is "unsure as to the basis for the 'final negotiated amount paid by H2H,' what invoices, if any, were satisfied by that payment, the dates of those invoices, or the date and nature of the service allegedly rendered by the subcontractor." (Williams Aff. ¶ 6). The affidavit further states that she "disagree[s] that H2H has shown that the amount requested [] logically or necessarily follows from the vague and unclear information presented by H2H to the Court." (*Id.* ¶ 7). But as a defaulting defendant, the facts as alleged by plaintiff against Williams must be taken as true. Furthermore, and in any event, neither she nor Haschen offer any specific evidence to the contrary. As is often the case with complex construction contract suits, this case presents issues of partial completion, partial payments, and muddled sources and uses of funds that make a perfect calculation impossible. *See, e.g., George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129, 132–48 (D. Mass. 1998).

Second, Haschen argues that the damages for which Williams should be responsible were decided by the jury in his trial. As discussed below, Haschen's trial explicitly addressed only his own fraudulent acts; the jury was specifically instructed not to consider Williams' conduct. And again, the factual allegations against Williams must be taken as true in light of her default; that means that she is responsible for the execution of numerous false lien waivers for which Haschen was not directly implicated.

Accordingly, the amount of damages assessed against Dorothy Williams will be $342,309.38.

B. <u>**Whether Liability Among the Co-Defendants Should Be Joint and Several**</u>

Under Massachusetts law, tortfeasors are held jointly and severally liable for damages

---

[2] The Court will assume that Haschen has standing to contest the motion, based on the possibility that he may be found jointly and severally liable for the fraud perpetrated by Williams.

6

when they are jointly responsible for the harm. Joseph W. Glannon, LIABILITY OF MULTIPLE TORTFEASORS IN MASSACHUSETTS, 85 MASS. L. REV. 50, 51 (2000); *see also O'Connor v. Raymark Indus., Inc.*, 401 Mass. 586, 591–2 (1988). Tortfeasors are considered joint if "two or more wrongdoers [] contribute to the [] injury of another by their several acts, which operate concurrently, so that in effect the damages suffered are rendered inseparable . . . ." *O'Connor,* 401 Mass. at 591 (quoting *Chase v. Roy*, 363 Mass. 402, 408 (1973)). The SJC has noted that this test is not limited to negligent acts. *O'Connor,* 401 Mass. at 591 ("[A] defendant's position is no better if the concurring acts of others were not negligent acts.").

As noted, Haschen was found liable by the jury in the amount of approximately $148,000, and Williams has been found liable by default in the amount of approximately $342,000. If Haschen and Williams are joint tortfeasors, the inconsistency in the amounts gives rise to a variety of problems. For example, if the court awards a default judgment against Williams in the amount of $342,000, *and* finds Haschen jointly and severally liable for that amount, it would be unfair to Haschen. In substance, the trial (and the jury verdict) would have been a pointless exercise, because he would wind up in the same position as if he himself had defaulted. But if the court reduces the default judgment against Williams to the amount of $148,000, and finds her jointly and severally liable for that amount, it would unfairly reward Williams. In substance, she would be in a better position for defaulting than if she had appeared and defended the case.

Under the circumstances, Williams and Haschen should not be found liable as joint tortfeasors, but rather as individuals perpetrating separate acts of fraud. To begin, that is the theory of the case that plaintiff pursued at trial. Plaintiff prosecuted the case at trial against Haschen as an individual tortfeasor who committed an act of fraud that was separate from the

7

acts perpetrated by Williams. (*See, e.g.,* P. Proposed Jury Inst. No. 1, Dkt. 134; Amend. Joint Pre-Trial Mem. 8-9, Dkt. 119). As a consequence, the Court gave the following instruction to the jury:

> This lawsuit is against Herbert Haschen personally. It is not against Blue Waters Dredging, LLC, David Urbani, or Dorothy Williams. There is evidence from which you could conclude that the Blue Waters Dredging, LLC and H2H Associates, LLC, had a contract for the performance of certain work, and that Blue Waters Dredging, LLC breached that contract. This is not, however, a claim for breach of contract against Blue Waters Dredging, LLC; there is only one claim, for fraud, against one defendant, Herbert Haschen. Herbert Haschen, individually, can be held responsible for his own conduct, but he cannot be held personally responsible for the debts and obligations of Blue Waters Dredging, LLC or any other person or company.

Although neither plaintiff nor Haschen requested that specific instruction, plaintiff's proposed instructions focused solely on Haschen's conduct. (*See* P. Prop. Jury Inst., Dkt. 134). If the theory of the case was that Haschen and Williams committed a single, unitary scheme to defraud, for which they should both be held jointly and severally liable, the trial would have been conducted, and the jury would have been instructed, in a different fashion.

A somewhat analogous situation was presented in *GEICO v. Parkway Medical Care, P.C.*, 2017 WL 1133282, *14–16 (E.D.N.Y. Feb. 1, 2017). Defendants had participated in an insurance-fraud scheme in which various licensed healthcare professionals incorporated sham medical corporations to submit fraudulent insurance-reimbursement claims. *Id.* *3–4. In untangling the fraud, the court considered the roles of the various parties, particularly in the apportionment of liability among defaulting defendants. *Id.* at *14–16. The court held that defendants related to the central corporate entity were jointly and severally liable for all damages, but the medical professionals were each liable only for damages attributable to their submissions. *Id.* GEICO had failed to prove that each doctor "acted jointly with one another" and that its injuries were "indivisible." *Id.*; *see also Allstate Ins. Co. v. Nazarov*, 2015 WL

8

5774459 (E.D.N.Y. Sept. 30, 2015) (holding various sub-groups of defendants jointly and severally liable, but not for the full damages, in similar insurance-fraud scheme); *see generally Angelo Iafrate Cons., LLC. v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) ("Parties are not similarly situated and a default judgment does not establish inconsistent judgments, however, if the liability of the defaulting party is based on independent wrongful acts or a legal theory distinct from the one under which the answering party prevailed.").

Here, Williams' fraudulent conduct involved the execution of six falsified lien waivers that induced distributions from H2H. Haschen's fraudulent conduct involved the execution of a different lien waiver inducing a different distribution. Although the conduct was all funneled through BWD, the fraudulent acts, and associated damages, of each defendant were distinct. As in *GEICO*, plaintiff has not shown that defendants acted with one another, and he certainly has not shown an indivisible injury.

Finally, the Court notes that there is an internal inconsistency in plaintiff's position. If the fraudulent acts of Williams and Haschen were part of a unitary scheme producing indivisible damages, then the jury verdict against Haschen would necessarily be the total of plaintiff's damages. Instead, plaintiff argues that Williams caused separate damages than Haschen, but also that both defendants should be jointly and severally liable. That tension is not addressed in the briefing, and plaintiff cannot have it both ways. Because joint tortfeasors produce indivisible damages, it is not possible that Williams' caused distinct damages than Haschen *and* that she and Haschen are joint tortfeasors.

In short, Williams and Haschen conducted separate acts of fraud that produced distinct damages. Accordingly, defendants will not be held jointly and severally liable for the damages caused by the other.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for a default judgment against Dorothy Williams in the amount of $342,309.38 is GRANTED. Defendants Herbert Haschen and Dorothy Williams will not be held jointly and severally liable for the obligations of each other. **So Ordered.**

Dated: January 21, 2020

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court